IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| CURTIS HUNTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CV 314-035 |
| | ) |
| CORRECTIONS CORPORATION OF | ) |
| AMERICA; JASON MEDLIN, Warden; | ) |
| RON DAY, Chaplain; JAY PHILLIPS, | ) |
| Faithbased Facilitator; and DAMON | ) |
| HININGER, President, | ) |
| | ) |
| Defendants. | ) |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

*Pro se* Plaintiff, a former inmate at Wheeler Correctional Facility, commenced the above-captioned case under 42 U.S.C. § 1983. Before the Court is Defendants' and Plaintiff's cross-motions for summary judgment. (Doc. nos. 90, 97.) For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED IN PART** and **DENIED IN PART** (doc. no. 90) and Plaintiff's motion for summary judgment be **DENIED** (doc. no. 97).

**I. FACTS**

Plaintiff's complaint alleges he is a Muslim forced to participate in Christianity while living in Wheeler Correctional Facility's faith-based dormitory. (See generally doc. no. 11.) Plaintiff contends Christianity was the only religion taught in the dormitory and he was forced to live in the dorm and participate in the faith-based program when he first arrived at

the prison because of limited bunk space. (Id.)

The Georgia Department of Corrections assigned Plaintiff to Wheeler Correctional Facility on April 3, 2012, and reassigned Plaintiff to Dooly State Prison on August 26, 2014. (Affidavit of Staci Benson ¶ 4, Doc. no. 90, p. 32; doc. no. 11, p. 7.). During his assignment at Wheeler Correctional Facility, Plaintiff participated in the Life Principles Program, now the subject of his complaint. (Doc. no. 11, pp. 7-11; Declaration of Jay Phillips, ¶ 7; doc. no. 90, p. 35.) Defendant Corrections Corporation of America ("CCA") operates the prison pursuant to a contract with the Georgia Department of Corrections. (Doc. no. 97-4, p. 12.) CCA operates the Life Principles Program, but no federal funds or state funds are received by the facility specifically for conducting the program, and it is free to the prisoners at Wheeler Correctional Facility. (Declaration of Medlin; ¶ 4, doc. no. 90. P. 23.).

The Life Principles Program uses Biblical texts to teach life principles and skills. (Phillips Decl. ¶ 4). The Life Principles Program has the following stated objectives:

  A. To facilitate one's self-image as a worthwhile human being;

  B. To gain respect for authority within family, religious organizations, businesses, or civil jurisdictions;

  C. To encourage participants to resolve guilt;

  D. To instill an appreciation for sorrow as a catalyst for growth and maturity;

  E. To teach the value of relationships are more important than possessions;

  F. To instill a desire to do right and offer positive reinforcement of that;

  G. To impart the importance of having a purpose in life;

2

> H. To teach basic principles of financial responsibility;
>
> I. To suggest positive solutions for family issues;
>
> J. To introduce skills for relationship building and positive parenting;
>
> K. To teach character qualities fundamental to success;
>
> L. To explain cause-and-effect sequence in human thought and action and to discuss the concept of moral law.

(Day Decl. ¶ 5.) The program has religious content and expresses the values of Christianity used as a teaching model in the program materials. (Day Decl. ¶ 7; Phillips Decl. ¶ 7.) However, participants are not required to adopt any particular religion, religious philosophy, or doctrine in order to be in the program. (Day Decl. ¶ 7; Phillips Decl. ¶ 6.) Daily group sessions teaching the program materials are mandatory during a prisoner's stay in the program. (Id.)

Plaintiff asserts the program involved three sessions per day. (Declaration of Curtis Hunter ¶ 5, doc. no. 96.) In the first session, inmates memorized Romans 6:1-2[1] and read that day's verse from Proverbs or Psalms. (Hunter Decl. ¶ 5.) In the second session, guests preached from the Bible. (Id.) In the third session, a character coach preached from the Bible, the prisoners watched a DVD on Christianity, or the group learned a lesson from one of the program books. (Id.) On Fridays at 7:30 a.m., the group praised and worshipped Jesus for one hour. (Id.)

---

[1] Romans 6:1-2 states the following: "What shall we say then? Shall we continue in sin, that grace may abound? By no means! How can we who died to sin still live in it?"

3

Ron Day, Chaplain at Wheeler Correctional Facility, explained that the Life Principles Program came prepackaged from a vendor. (Day Decl. ¶¶ 3, 8.) The program has no effect on an inmate's parole, time credits, custody status or classification. (Id., ¶ 6.) The program goal is one of strictly self-improvement, and prisoners must qualify for the program by their good conduct. (Id.) Chaplain Day testified that program participants must view program videos, read program material, and attend group sessions, but participants are allowed to discuss issues of concern to them, including their religious philosophies, and Muslims are allowed their customary prayer times. (Id., ¶ 9.) In the concluding paragraph of his declaration, Chaplain Day asserts (1) prisoners were encouraged to participate in separate religious activities of their choice because the Life Principles Program did not teach religion; (2) inmates were given adequate free time to do so; (3) the program did not offer worship or religious opportunities because inmates were allowed this opportunity on their own time and through other prison facilities; (4) Plaintiff was never denied the opportunity to pray, read, study, or participate in Islamic activities; and (5) the Life Principles Program did not incorporate Plaintiff's Islamic religion due to its prepackaged nature. (Id., ¶ 10.)

According to Jay Phillips, the facilitator of the program, participants could stop their participation in the program and leave with no adverse impact on their record at any time. (Phillips Decl. ¶¶ 6, 7). However, Plaintiff testified through a sworn declaration that he entered the program because it was the only dorm where a bottom bunk was available when he first arrived, and he had a bottom bunk profile at the time. (Hunter Decl. ¶ 3.) In addition, Plaintiff alleges prison officials falsely promised he could teach Islam in the

4

program, and completing the program would allow him to receive time off his tentative parole month eligibility. (Id. ¶¶ 3, 11.) Documentation from Plaintiff's first complaint shows that Wheeler Correctional Facility gave him a safety profile for a bottom bunk on April 30, 2012, three weeks after he transferred to the prison. (Doc. no. 1, p. 21.) Plaintiff asserts he had a bottom bunk profile at his previous prison and that it should have been renewed more quickly by Wheeler Correctional Facility. (Hunter Decl. ¶ 3.) Facilitator Phillips does not deny Plaintiff may have been initially placed in the program due to bottom bunk availability but testified he talked to Plaintiff after he entered the program, and Plaintiff expressed his desire to stay in the program despite the availability of bottom bunks in other dormitories. (Id., ¶ 7.) A sworn declaration from Defendant Medlin, Warden at Wheeler Correctional Facility, indicates that Plaintiff would not have been exempted from the program sessions even during his initial placement caused by the lack of bunk space in other dorms. (Medlin Decl. ¶ 4.)

Plaintiff successfully completed the Life Principles Program and was transferred out of the dorm into general population. (Phillips Decl. ¶ 9.) Once an inmate successfully completes the program, he is not allowed to remain in or return to the program. (Phillips Decl. ¶ 13.) There are no Islamic, Catholic, Muslim or other religious items purchased for the program. (Phillips Decl. ¶ 10.) Plaintiff never personally received any disciplinary reports for failing to attend the mandatory group sessions. (Benson Decl. ¶ 4)

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). When seeking summary judgment, the movant must show that there are no genuine issues of material fact to be decided at a trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark, 929 F.2d at 606-08 (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary

judgment." Clark, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (quoting Adickes, 398 U.S. at 158-59). A genuine dispute as to a material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

### B. Plaintiff's Claim for Injunctive Relief is Moot.

Plaintiff demands Defendant CCA implement Islam and four other religions into the Life Principles Program. (Doc. no. 11, p. 6.) Defendants respond that this claim is moot because Plaintiff has been moved from Wheeler Correctional Facility to Dooly State Prison and has completed the program. (Doc. no. 90, p. 8.) Plaintiff claims his request for injunctive relief is not moot because there is a threat of future abuse to him from the alleged unconstitutional practice and program. (Doc. no. 97, pp. 6-7.)

Article III of the Constitution limits the jurisdiction of the federal courts to the consideration of 'Cases' and 'Controversies.'" Mingkid v. U.S. Att'y Gen., 468 F.3d 763, 768 (11th Cir.2006) (citation omitted). "The doctrine of mootness derives directly from the case-or-controversy limitation, because an action that is moot cannot be characterized as an active case or controversy." Id. (citation omitted). A case is moot when it no longer presents a live controversy for which the court can provide meaningful relief. Id. The general rule in

the Eleventh Circuit is that a transfer or release of a prisoner from prison will moot that prisoner's claims for injunctive and declaratory relief. McKinnon v. Talladega Cty., Ala., 745 F.2d 1360, 1363 (11th Cir. 1984).

Here, Plaintiff's claim for CCA to implement other religions into the Life Principles Program is clearly moot. Plaintiff has long finished the program, is not eligible to return to the program, and no longer resides at the prison in which the program is implemented. Thus, implementing other religions into the program would afford him no relief and would only serve to benefit far removed third parties. Cf. Smith v. Allen, 502 F.3d 1255, 1268 (11th Cir. 2007) (finding prisoner's claim for injunctive relief requesting use of quartz crystal was not moot because he returned to prison and would likely be denied use of crystal again), abrogated on other grounds by Sossamon v. Texas, 563 U.S. 277, 131 S. Ct. 1651, 179 L. Ed. 2d 700 (2011). Accordingly, Plaintiff's claims for injunctive relief are moot, and Defendants are entitled to summary judgment on this claim.

### C. Plaintiff is Only Entitled to Nominal Damages.

Plaintiff requests $3 million in compensatory damages and $1.5 million in punitive damages due to humiliation suffered by being forced to practice Christianity. (Doc. no. 11, p. 6.) Defendants contend Plaintiff is only entitled to nominal damages under the Prison Litigation Reform Act ("PLRA") because he has not shown a physical injury. (Doc. no. 90, pp. 9-11.) 42 U.S.C. § 1997e(e) provides:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in

> custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18).

Plaintiff has clearly not alleged a physical injury from being subjected to the Life Principles Program, only a mental or emotional injury from being forced to practice Christianity. Plaintiff argues 42 U.S.C § 1997e is unconstitutional when applied to his claims. (Doc. no. 97; p. 8.) However, Plaintiff does not cite any Eleventh Circuit case law for this proposition. (See id.)

The Eleventh Circuit has held 42 U.S.C. § 1997e is constitutional and that Congress has left open avenues for other types of relief that are ample for constitutional purposes. Harris v. Garner, 190 F.3d 1279 (11th Cir.1999), reh'g en banc granted and opinion vacated, 197 F.3d 1059 (11th Cir.1999); see Al-Amin v. Smith, 637 F.3d 1192, 1196 (11th Cir. 2011) (holding prisoner could not maintain claim for punitive damages for prison opening his legal mail). The Eleventh Circuit has also applied 42 U.S.C. § 1997e to First Amendment and Religious Land Use and Institutionalized Persons Act ("RLUIPA") claims. Allen, 502 F.3d 1255 at 1271.

Here, Plaintiff has not alleged, nor can he show, an actual physical injury and cannot get around the bar present in 42 U.S.C.§ 1997e by alleging that it is unconstitutional. Congress has left room for sufficient relief under the Constitution in the form of nominal damages, and Plaintiff cannot claim more without physical injury. Allen, 502 F.3d 1255 at 1271 (finding Plaintiff could still seek nominal damages for constitutional claims).

### D. Defendants are not Entitled to Summary Judgment on Plaintiff's Establishment Clause Claims.

Defendants argue the Life Principles Program does not violate the Establishment Clause because it has a secular purpose, does not foster excessive entanglement, does not coerce prisoners to participate in Christianity, does not endorse any particular religion, and is available to all prisoners regardless of their religious faith. (Doc. no. 90, pp. 12-14.) Plaintiff maintains the program violates the Establishment Clause because it only teaches Christianity. (Doc. no. 97, pp. 17-18.)

The Establishment Clause of the First Amendment states, "Congress shall make no law respecting an establishment of religion." U.S. Const. amend. I. This restriction applies to states, as well as state-created entities and their employees, through the Due Process Clause of the Fourteenth Amendment. Holloman v. Harland, 370 F.3d 1252, 1284 (11th Cir.2004). The Establishment Clause erects a barrier between government and religious entities "'depending on all the circumstances of a particular relationship. " Lynch v. Donnelly, 465 U.S. 668, 678–79 (1984), (quoting Lemon v. Kurtzman, 403 U.S. 602, 614 (1971)); see McCreary County v. Am. Civ. Liberties Union, 545 U.S. 844, 867 (2005) ("under the Establishment Clause detail is key"). For those "who wrote the Religion Clauses of the First Amendment the 'establishment' of a religion connoted sponsorship, financial support, and active involvement of the sovereign in religious activity." Walz v. Tax Comm'n, 397 U.S. 664, 668 (1970).

Defendants argue the Life Principles Program does not violate the Establishment Clause under various tests propounded by the Supreme Court. (Doc. no. 90, pp. 12-14.) These include the Lemon-Agostini test, the coercion test from Cty. of Allegheny v. Am. Civil Liberties Union Greater Pittsburgh Chapter, 492 U.S. 573, 576 (1989), the endorsement test from Lynch v. Donnelly, 465 U.S. 668, 671 (1984), and the neutrality test from Zelman v. Simmons-Harris, 536 U.S. 639, 652 (2002). The Supreme Court has not considered the Establishment Clause within the context of a prison. However, in an unpublished case, the Eleventh Circuit applied the Lemon test to a faith-based dormitory program inside a prison. Smith v. Governor for Alabama, 562 F. App'x 806, 816 (11th Cir. 2014). The Eleventh Circuit has consistently applied the Lemon test outside of cases involving legislative prayer. Compare King v. Richmond Cty., Ga., 331 F.3d 1271, 1276 (11th Cir. 2003) (applying Lemon test to court seal containing ten commandments) and Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1284 (11th Cir. 2004) (applying Lemon test to teacher's moment of silence) with Pelphrey v. Cobb Cty., Ga., 547 F.3d 1263, 1276 (11th Cir. 2008) (applying Marsh to prayer by county commission). Thus, the Court will apply Lemon, as modified in Agostini v. Felton, 521 U.S. 203, 211 (1997), to Plaintiff's claims that the Life Principles Program violates the Establishment Clause.

In Lemon, 403 U.S. at 602, the Supreme Court established a three-prong test for assessing the permissibility of statutes under the Establishment Clause. "First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; finally, the statute must not foster an excessive

11

government entanglement with religion." Id. at 612–13.  The Supreme Court refined the test in Agostini, however, stating, "[T]he factors we use to assess whether an entanglement is 'excessive' are similar to the factors we use to examine 'effect.' . . . [I]t is simplest to recognize why entanglement is significant and treat it . . . as an aspect of the inquiry into a statute's effect."  521 U.S. at 233.  Thus, while the Court has folded its traditional "excessive entanglement" inquiry into its "primary effect" analysis, the substance of its Establishment Clause jurisprudence remains fundamentally unaltered.  See, e.g., Zelman v. Simmons–Harris, 536 U.S. 639, 648–49 (2002).

Here, Defendants offer a multitude of secular, nonreligious purposes behind the Life Principles Program ranging from resolving guilt to suggesting positive solutions to family issues.  (Day Decl. ¶ 5.)  Although a high-order goal of the program may have a secular purpose, the Court must also look to more immediate, tangible, or lower-order consequences the program intends to bring about.  Holloman, 370 F.3d at 1285.  Here, Defendants admit that the program uses "biblical tools" to meet the secular purposes of the program.  (Doc. no. 90, p. 13.)  In an interrogatory, Defendant Day also stated that "[m]aterial does mainly come from new and old books of the Bible."  (Doc. no. 44, p. 15.)  Plaintiff has also stated in a sworn declaration that he was required to memorize Bible verses as part of this program, attend sermons taught from the Bible, and attend sessions of praise and worship to Jesus Christ.  (Hunter Decl. ¶ 5.)  Thus, an issue of material fact remains as to whether the higher order secular purposes of the program are negated by the lower-order consequences of inmates gaining familiarity with the Bible and biblical teachings through the mandatory

sessions. See Holloman, 370 F.3d at 1285. Accordingly, Defendants are not entitled to summary judgment on the basis of their proffered secular purposes.

Defendants argue (1) the primary effect is not to advance religion because conversion is not required, (2) no federal or state funds are received specifically for the program, and (3) the program is entirely voluntary. (See doc. no. 90, p. 13.) All three arguments fail. First, Defendants' argument that no federal or state funds are received specifically for the program ignores the fact that Wheeler Correctional Facility, though privately operated, is funded by the state of Georgia and serves a public function. (See Day Decl. ¶ 2; doc. no. 97-4.) Although no funds are directly received for the Life Principles Program, the state is in effect paying for the program through its contract with CCA. This critical feature renders inapplicable cases where public monies were distributed to a private individual that chose to use the funds on religious studies. See, e.g., Witters v. Washington Dep't of Servs. for the Blind, 474 U.S. 481, 488 (1986).

Second, voluntariness is not dispositive as to the principle effect of the program. As put squarely by the Supreme Court, it "has never relied on coercion alone as the touchstone of Establishment Clause analysis." Cty. of Allegheny v. Am. Civil Liberties Union Greater Pittsburgh Chapter, 492 U.S. 573, (1989) abrogated by Town of Greece, N.Y. v. Galloway, 134 S. Ct. 1811, 188 L. Ed. 2d 835 (2014). While coercion may be one method to violate the Establishment Clause, it is not the sole method. See id. Accordingly, Plaintiff's voluntary choice to continue in the program after bottom bunks became available in other dorms does not absolve the Life Principles Program of being unconstitutional under the Establishment

13

Clause. Further, an issue of material fact remains as to whether the program was actually voluntary for Plaintiff for the first few days he was assigned to the dorm since Plaintiff has always alleged he needed a bottom bunk for safety and no bottom bunk was available in other dorms. Also of concern is Plaintiff's allegation that successful completion of the program results in time off an inmate's tentative parole month eligibility. (Hunter Decl. ¶ 11.); See Ross v. Keelings, 2 F. Supp. 2d 810, 818 (E.D. Va. 1998) (prison rehabilitation program that taught religion and gave good conduct credit violates Establishment Clause under coercion test).

Third, the lack of requiring conversion also does not mandate a finding the program is permissible under the Establishment Clause. As noted in Agostini, "government inculcation of religious beliefs has the impermissible effect of advancing religion." 521 U.S. at 223. However, Agostini defined government inculcation more broadly than Defendants, to include financing of religious indoctrination and not merely government required conversion. Id. at 229. In Mitchell v. Helms, 530 U.S. 793, 809 (2000), the Supreme Court framed the inquiry as "whether any religious indoctrination that occurs . . . could reasonably be attributed to governmental action." Here, a question of material fact remains as to whether the Life Principles Program results in government inculcation of religious beliefs.[2] Because program

---

[2] Whether a particular practice violates the Establishment Clause appears to be a mixed question of law and fact. Clayton by Clayton v. Place, 884 F.2d 376, 378 (8th Cir. 1989)

14

administrators admit many, if not most or all of the program teachings come from the Bible, potential conversions by prisoners might be fairly attributable to the state of Georgia.

Providing further support for this conclusion is Americans United for Separation of Church & State v. Prison Fellowship Ministries, Inc., 509 F.3d 406, 424 (8th Cir. 2007). There, the Iowa Department of Corrections funded a faith-based dorm run by InnerChange, a nonprofit organization, which was dominated by Bible study, Christian classes, religious revivals, and church services. Id. The Eight Circuit found religious indoctrination as a result of the program could reasonably be attributed to Iowa's funding of the dormitory. Id.

The Life Principles Program is also markedly different in character than the faith-based dorm upheld by the Eleventh Circuit as constitutional in Smith, 562 F. App'x at 816. In Smith, the faith-based dorm allowed prisoners to receive credit for attending classes based on Christianity, Buddhism, and Native American religions. Id. In addition, the dorm's spiritual educational element was only one of twenty suggested areas of programming, all of which were secular. Id. Here, there is no such diversity of religions or other secular programs offered in the Life Principles Program. Defendants admit that the program is largely based on biblical teachings. Thus, Defendants are not entitled to summary judgment on the basis that prisoners are not required to convert to Christianity.

### E. Defendants are not Entitled to Summary Judgment on Plaintiff's RLUIPA Claims.

Defendants argue they are entitled to summary judgment on Plaintiff's RLUIPA claims because participation in the program was entirely voluntary. (Doc. no. 90, pp. 14-18.)

15

Plaintiff contests this characterization and alleges he was forced to join the program because no bottom bunk was available elsewhere and he was enticed to join the program through false representations he could teach Islam. (Hunter Decl. ¶ 3.) Plaintiff also alleges he was forced to participate in Christianity through the mandatory group sessions. (Doc. no. 97, p. 5.) 42 U.S.C. 2000cc-1 provides the following:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

To establish a prima facie case under section 3 of RLUIPA, a plaintiff must demonstrate (1) he engaged in a religious exercise; and (2) the religious exercise was substantially burdened. Smith, 502 F.3d at 1276. If a plaintiff makes such a showing, the government must then demonstrate that imposition of the burden or refusal to accommodate a plaintiff's belief furthers a compelling government interest by the least restrictive means. 42 U.S.C. § 2000cc–1(a); 42 U.S.C. § 2000cc–2(b). "[I]f the plaintiff fails to present evidence to support a prima facie case under RLUIPA, the court need not inquire into whether the governmental interest at stake was compelling." Smith, 502 F.3d at 1276; see also Benning v. Georgia, 845 F. Supp. 2d 1372, 1376–77 (M.D. Ga. 2012)

RLUIPA defines "religious exercise" broadly to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. 2000cc-

16

5(7). Defendants do not dispute that Plaintiff's Islamic beliefs are sincerely held or that the practice of Islam is the exercise of religion. Thus, the first prong of the prima facie case has been satisfied.

Defendants dispute that a substantial burden has been placed upon Plaintiff's Islamic faith because they allege his participation in the program was voluntary and he could have left the program at any time. Importantly, Defendants do not argue that being forced to practice Christianity would not be a substantial burden upon Plaintiff's religious exercise. Indeed, being forced to engage in conduct that violates one's religious beliefs constitutes a substantial burden. See Holt v. Hobbs, 135 S. Ct. 853, 862 (2015) (finding policy that coerced Muslim prisoner into shaving his beard through a disciplinary report imposed a substantial burden). Instead, Defendants argue Plaintiff was never forced to participate in the group sessions because he could have left the program.

An issue of material fact remains as to whether Plaintiff's initial participation in the program was voluntary and whether his continued participation in the program became voluntary. Plaintiff swears he was placed in the dorm initially based on necessity because of his need and eligibility for a bottom bunk profile, and based on false representations he could teach Islam. (Hunter Decl. ¶ 3.) Defendant Medlin confirms that Plaintiff would not have been exempted from the group sessions even during his initial placement for reasons of bunk space. (Medlin Decl. ¶ 4.) Thus, Plaintiff could have been placed in the program for safety reasons, due to his need for a bottom bunk, and still forced to attend group sessions based on biblical teachings, despite his Islamic beliefs. (See doc. no. 1, p. 21.) Defendant Phillips

17

declares that at some point, he had a conversation with Plaintiff and asked him if he wanted to stay, to which Plaintiff responded that he did. (Phillips Decl. ¶ 7.) However, Defendant Phillips does not indicate when this conversation occurred and at the very least, suggests Plaintiff is correct when he alleges that he spent some time in the program before being told he had the option to leave. Plaintiff also cites examples of other inmates being punished for failing to attend the group sessions and one instance when a prisoner who expressed a desire to leave the program was threatened with a disciplinary report. (Hunter Decl. ¶¶ 7, 9) For these reasons, there is an issue of fact concerning whether Plaintiff's participation in the program was voluntary.

### F. Plaintiff is not Entitled to Summary Judgment.

Plaintiff has filed a "cross-motion for summary judgment" which in substance is more properly characterized as a response in opposition to Defendants' motion for summary judgment. (Doc. no. 94.) Indeed, Plaintiff has confirmed the "motion" is a response to Defendants' motion for summary judgment. (See doc. no. 105.)

Even construing the response as a motion for summary judgment, Plaintiff is not entitled to summary judgment. Large evidentiary gaps exist as to the exact content of the group sessions in the Life Principles Program, and Plaintiff has introduced scant competent evidence to fill these gaps. (See doc. nos. 96, 97.) Plaintiff's sworn declaration only gives general information about three sessions within a program that lasts seven months. (See Hunter Decl. ¶ 5.) With the current record, genuine issues of material fact remain as to

whether the principal effect of the program was to advance Christianity and whether Plaintiff voluntarily entered the program, and thus Plaintiff is not entitled to summary judgment.

### III. CONCLUSION

For the reasons give above, the Court **REPORTS** and **RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED IN PART** and **DENIED IN PART** (doc. no. 90) and Plaintiff's motion for summary judgment be **DENIED** (doc. no. 97).

SO REPORTED AND RECOMMENDED this 9th day of August, 2016, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA